IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Anthony Kafka, | ) |
| | ) Case No. 12 C 50123 |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Chief Donald Grady, in his | ) |
| individual capacity, & Lt. Todd | ) Judge Philip G. Reinhard |
| Henert, in his individual capacity, | ) |
| | ) |
| Defendants. | ) |

## ORDER

For the reasons stated below, defendants Chief Donald Grady and Lieutenant Todd Henert's motion for summary judgment [54] is granted. The case is closed.

## STATEMENT-OPINION

On April 11, 2012, plaintiff Anthony Kafka, a former Northern Illinois Police Officer, filed a two count complaint under 42 U.S.C. § 1983 against defendants Chief of Police Donald Grady and Lieutenant Todd Henert (plaintiff's former supervisors/superiors). *See* [1]. In his complaint, plaintiff alleged Grady and Henert violated his First Amendment rights by retaliating against him through various employment actions. *See id.* Specifically, plaintiff claimed he exercised his First Amendment rights by filing a number of grievances in his role as vice president of the union of police officers and defendants Grady and Henert retaliated against him by "reducing [his] work hours, prohibiting [him] from working on vehicle patrol duties, changing [his] shift and duty assignment schedules, denying [him] vacation . . . [c]onducting an investigation designed to intimidate, harass, annoy and harm [him] . . ." and eventually terminating his employment. [1] at 7-8. Count one of the complaint sets forth a First Amendment retaliation claim under Section 1983. In count two, plaintiff asserts a conspiracy claim under Section 1983. [1] at 9.

On February 5, 2013, defendants Grady and Henert moved to dismiss portions of the complaint. *See* [21]. In their motion, they argued that certain allegations should be dismissed as untimely because Section 1983 claims carry a two-year statute of limitations. *See id.* Ultimately, this court agreed and struck paragraphs 12 through 28 of the complaint. *See* [31]. After issuing this opinion, the court instructed defendants to answer to the remaining portions of the complaint and ordered both sides to begin discovery.

The parties have now completed discovery and currently before the court is defendants' motion for summary judgment. *See* [54]. In their motion, defendants argue they are entitled to summary judgment on both counts because plaintiff cannot set forth a *prima facie* case. Alternatively, defendants contend they are entitled to qualified immunity. *See* [54]-[55]. Plaintiff has responded and does not oppose dismissal of count two so long as count one survives. *See* [59] at 19-20. He argues that he has established a *prima facie* case in count one and defendants' motion should be denied with respect to his First Amendment retaliation claim.

On summary judgment, the court construes all facts and draws all inferences in the light most favorable to the non-moving party. *Schepers v. Commissioner, Indiana Dept. of Corrections,* 691 F.3d 909, 913 (7th Cir. 2012). The court does not weigh evidence or determine the credibility of witness testimony. *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th Cir. 2011). Instead, the court only grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). That said, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Prior to addressing the merits of defendants' motion, it is necessary to set forth the undisputed facts located in the parties' Local Rule 56.1 Statements of Material Fact. In doing so, the court is cognizant of its obligation to construe all facts in the light most favorable to plaintiff and does so accordingly. *See Schepers*, 691 F.3d at 913.

Plaintiff was hired as a police officer for the Northern Illinois University Department of Public Safety ("NIUPD") on August 6, 2001. [61] ¶ 1. At the time he was hired, defendant Grady was the Chief of Police of the NIUPD and Henert was a patrol officer, (Henert was later promoted to Lieutenant and Director of Police Operations in 2007). [61] ¶¶ 2-3.

In September 2008, plaintiff was the vice president of the union of police officers and was also the acting president because the actual president was off of work due to an injury. [67] ¶ 2. Between September 2008 and September 2009, plaintiff filed approximately 24 grievances on behalf of the union. At some point in late 2008, he also filed an unfair labor practice charge on behalf of the union against the NIUPD and defendant Grady. *See id.* Prior to filing the charge, he informed Grady of the union's intentions and Grady became upset. Apparently, Grady told plaintiff filing an unfair labor practice charge was "the equivalent of nuclear war." [67] ¶ 6.

At some point after this, plaintiff was involved in his second at-fault automobile accident while driving an NIUPD vehicle. As a result of the accident, he received a three-day suspension and was assigned exclusively to foot patrol. *See* [67] ¶¶ 9-10. Plaintiff did not feel the assignment to foot patrol was necessary and filed a grievance seeking relief. [67] ¶ 8. However, his grievance was denied.

2

Shortly after the accident, plaintiff was assigned to a program entitled Secure Areas for Everyone ("SAFE"). *See* [61] ¶ 25. SAFE officers generally work day shifts and are assigned to foot patrol. While his pay, shift, title, and seniority did not change, plaintiff was unhappy with his assignment and again complained about not being permitted to drive an NIUPD vehicle. *Id.* ¶ 25-26. As a result, he filed a grievance concerning his assignment to SAFE. In his grievance, he alleged the assignment to SAFE was in retaliation for his union activity. After his grievance was denied, he appealed and Grady referred the matter to Human Resources for review. [61] ¶ 30.

In March 2010, plaintiff received a two-day suspension for illegally entering an apartment and seizing property while on duty. Plaintiff later admitted he illegally entered the dwelling and stated that at the time he did so he was unaware he was violating the law and NIUPD policy. He felt the two-day suspension was justified. [61] ¶ 33.

In the spring of 2010, plaintiff was assigned to a task known as Book Buyback duty. [67] ¶ 19. Apparently, this duty involves acting as a security guard while NIU students sell their books back. *Id.* Plaintiff believed this task was "tedious" and "boring" and claimed he was assigned to this task more frequently than other officers because of his involvement with the union. *Id.*

On May 4, 2010, plaintiff submitted a vacation request. The request indicated he wished to take a vacation day on June 5, 2010 as long as he was "not scheduled for training or required to supplement patrol due to staffing shortage . . .[.]" [61] ¶ 36. Plaintiff sought to take that particular day off so he could celebrate his anniversary with his wife. *Id.*

Generally, the NIUPD conducts its annual training at the end of the spring semester. As a result, officers are advised that vacation requests during this time are disfavored and usually denied. [61] ¶ 37. In 2010, the training was scheduled the first week of June, (during the time plaintiff wished to take a vacation day). *Id.*

On May 24, 2010, the NIUPD posted the schedule for May 31, 2010 through June 13, 2010. The schedule reflected that plaintiff was assigned to work a twelve-hour shift on June 5, 2010. After he learned he was scheduled to work, plaintiff was upset and sent an email asking to have his schedule changed from a twelve-hour shift to a seven-hour shift. [61] ¶ 38.

In light of his request, a revised schedule was posted a few days later. [61] ¶¶ 39-40. The revised schedule partially accommodated plaintiff's request and scheduled him for an eight-hour shift, rather than a twelve-hour shift. [61] ¶ 39.

On May 27, 2010, plaintiff reported to work and reviewed the revised schedule. After doing so, he became angry that he was still scheduled to work on June 5. While armed, he shouted, "I don't know if I should shoot Karen (Clifton), or if I should shoot the rest of you all!" [61] ¶ 40. He made this statement in the presence of Sergeant Dathan Jackson and Officer Cynthia Zimberoff as well as other employees of the NIUPD. While making the statement, he

3

slammed his fists on a table, slapped a wall, and used profanity. *Id.* ¶¶ 40-41. At no point did he indicate he was joking. *Id.*

Shortly after the outburst, plaintiff informed Sergeant Jackson (his supervisor at the time) that he wished to go home. He gave Jackson a "Report of Absence" form and on it wrote the reason for his absence was, "PSYCHOLOGICAL DISTRESS!!" [61] ¶ 41.

Later that day, plaintiff contacted the NIU Employee Wellness Center and saw Nancy Apperson, a counselor within the Wellness Center. [61] ¶ 43. After seeing Apperson, he was examined by a Doctor. The Doctor recommended that plaintiff take two weeks off of work and then report for a second evaluation. *Id.*

Shortly after the incident, Sergeant Jackson contacted defendant Henert and Lieutenant Mitchell to inform them of plaintiff's outburst. Lieutenant Mitchell told Jackson to document the incident and obtain witness statements. [61] ¶ 44. He also instructed Jackson to secure plaintiff's department issued handgun from plaintiff's locker since plaintiff had apparently left the weapon there. *Id.*

Plaintiff later characterized the entire incident as a "meltdown." [61] ¶ 41. He wrote a voluntary statement explaining his behavior. In this statement, he stated that he decided to leave his NIUPD department issued weapon in his locker because he was "unfocused." [61] ¶ 46.

A few days later, the NIU Threat Assessment Team met to discuss plaintiff's outburst. *See* [61] ¶ 50. The team was faced with the task of determining the level of threat plaintiff posed pursuant to a Threat Assessment Matrix. The NIU Threat Assessment Team concluded plaintiff's threat level was a 3.5 (out of five). In relevant part, the Team's summary states, "[t]he rationale for this level was that the individual subject in question is a police officer, with access to weapons, with prior military training . . . [t]he major concern by all was his access to weapons." [61] ¶ 50. Neither Grady nor Henert were members of the Threat Assessment Team and neither provided the team with any information about plaintiff or his outburst. [61] ¶ 51.

Less than two months later, the NIUPD sergeants had a meeting. During the meeting, Henert informed the sergeants that he was conducting an investigation concerning plaintiff's outburst. All eleven sergeants submitted written statements which stated they believed plaintiff should be terminated and indicated they would not be comfortable working with him. [61] ¶ 54.

Henert then reviewed the sergeants' statements, plaintiff's statement, witness statements, and the video surveillance from the NIUPD's security system to prepare a "Request for Discipline." [61] ¶ 56. In his request, Henert recommended that plaintiff's employment be terminated.

During this time, plaintiff was on paid leave. While on leave, Grady requested that plaintiff undergo a psychological evaluation to determine whether an outburst or similar

4

meltdown was likely to occur again. [61] ¶ 58. Pursuant to this request, plaintiff was evaluated by a psychologist. The psychologist conducted an interview and submitted a seven-page assessment. In relevant part, the assessment noted plaintiff was "likely to experience continued problems managing himself and his behavior . . . [and] his failure to acknowledge the intense anger he was experiencing at the time and his inability to control his emotional response . . . d[id] not bode well for his ability to manage himself under the pressure and stress of future police emergencies or other highly conflicted personal situations within the Department." [61] ¶¶ 59-60. The assessment concluded that future "meltdowns" were a "distinct likelihood." [61] ¶ 61.

Grady considered this report in addition to Henert's findings, and plaintiff's statement. After doing so, he sent plaintiff a recommendation for termination. The recommendation was also sent to Human Resources. [61] ¶ 63.

At this point, plaintiff was given an opportunity to challenge Grady's recommendation. A hearing was held before the Human Resources department at the NIUPD. After the hearing, Human Resources was left to make a final determination to either deny or sustain Grady's recommendation. [61] ¶ 64. Ultimately, Human Resources sustained the recommendation. As a result, plaintiff was terminated from the NIUPD. He appealed the decision to the Civil Service Merit Board, but the Board also agreed that termination was appropriate under the circumstances. [61] ¶ 65.

On September 29, 2010, NIU sent plaintiff a notice of intent to discharge from employment. The notice stated, "The substance of intent to discharge is as follows: [on] May 27, 2010, while armed and on duty, and in a fit of rage, in the presence of a supervisor, you s[t]ated 'I don't know if I should shoot Karen or if I should shoot the rest of you all.'" [61] ¶ 69.

On April 11, 2012, plaintiff filed the instant suit against Grady and Henert. *See* [1]. In his complaint, he alleged, (among other things), that his termination was the result of illegal retaliation under the First Amendment. Specifically, he claimed Grady and Henert retaliated against him because of his union speech.

On April 30, 2014, Grady and Henert filed the instant motion for summary judgment. *See* [54]. In their motion, Grady and Henert argue plaintiff has failed to establish a *prima facie* case on either of his Section 1983 claims. Alternatively, they claim they are entitled to qualified immunity. Plaintiff does not oppose dismissal of count two if count one is not dismissed. Plaintiff contends he has set forth a *prima facie* case in count one and therefore summary judgment is not appropriate. The court will address both counts in turn.

**A. Count One: First Amendment Retaliation under 42 U.S.C. § 1983**

Summary judgment decisions on First Amendment retaliation claims involve a burden-shifting framework. *See Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). First, a plaintiff must establish a *prima facie* case. To do so, he must demonstrate that "(1) he engaged

5

in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Id.* (citing *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012)). If a plaintiff makes a *prima facie* showing, "the burden shifts to the defendant to show that the harm would have occurred anyway." *Thayer*, 705 F.3d at 251-52 (citation and internal quotation marks omitted). If the defendant makes this showing, "the burden shifts back to the plaintiff to demonstrate that the proffered reason was a mere pretext and that the real reason was retaliatory animus." *Id.* at 252.

Grady and Henert contend plaintiff cannot set forth a *prima facie* case. They do not dispute that plaintiff's termination satisfies the second prong for a retaliation claim. However, they argue plaintiff's contentions regarding tedious job assignments, schedule changes, and his inability to take a vacation do not constitute constitutional deprivations likely to deter protected speech. *See* [55] at 5-6 n.3. Additionally, Grady and Henert believe plaintiff cannot satisfy the first and third elements for a First Amendment retaliation claim. Finally, Grady and Henert argue that count one fails even if the court finds plaintiff has set forth a *prima facie* case, because he cannot establish pretext.

Plaintiff disagrees. He contends that he has established a *prima facie* First Amendment retaliation claim and has established pretext.

The court will begin by examining whether plaintiff has established the three requisite elements for a First Amendment retaliation claim. Then, the court will turn to the issue of pretext.

*1.) Constitutionally Protected Speech*

Plaintiff claims he has satisfied the first element required for a First Amendment retaliation claim because he engaged in constitutionally protected speech. He states that his actions "concern[ing] filing grievances as well as filing ULP's [unfair labor practice charges] with the State Labor Board" constitutes speech of public concern and therefore amount to protect activities under the First Amendment. [59] at 5. In addition to this, plaintiff states his complaints about the misconduct and mismanagement of the defendants to NIU and the State's Attorney's office are constitutionally protected activities. Interestingly, plaintiff does not attempt to argue that the statements he made during his May 2010 outburst are constitutionally protected.

Grady and Henert claim plaintiff's speech is not protected. They contend the speech at issue was of a private nature and motivated by personal interests and therefore not speech which receives constitutional protection.

"The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Houskins v. Sheahan*, 549 F.3d 480, 489 (7th Cir. 2008). "[W]hen public employees make statements pursuant to their official duties,

6

the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communication from employer discipline." *Id.* at 490 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). Thus, the relevant inquiry is "whether a plaintiff was speaking "as a citizen" or as part of h[is] public job[.]" *Id.* (citations omitted). If he was speaking as a citizen and was speaking of matters of public concern, his speech could be protected by the First Amendment. However, if a plaintiff was simply speaking as part of his job and was speaking on issues of a personal nature, the speech is not protected. *Id.* That said, "[t]he fact that an employee has a personal stake in the subject matter of the speech does not necessarily remove the speech from the scope of public concern." *Phelan v. Cook County*, 463 F.3d 773, 791 (7th Cir. 2006) (citations omitted). Instead, the court must examine the content, context, and form of the speech to determine if it is indeed a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 147-48 (1983).

When viewing the facts in the light most favorable to plaintiff and drawing all inferences in his favor, the court finds plaintiff's union grievances and unfair labor practice charges (though a close question arguably) could be considered matters of public concern and therefore have the potential to enjoy First Amendment protection. *See Shefick v. Village of Calumet Park*, 532 F. Supp. 2d 965, 976-77(N.D. Ill. 2007); *but see Bivens v. Trent*, 591 F.3d 555, 562 (7th Cir. 2010) (finding that although the "public may have been interested in [the plaintiff's] grievance and may have benefitted from the resolution he requested [the plaintiff's speech] d[id] not raise . . . to the level of public concern."). Plaintiff asserts that his union grievances involved allegations which prevented police officers from performing their jobs. He also claims that his grievances involved allegations of potential misconduct amongst the NIUPD. Assuming this is true, the speech is a matter of public concern and therefore could receive First Amendment protection. *See Shefick*, 532 F. Supp. 2d at 976-77.

That does not end the inquiry though. After the court determines that the speech at issue is of public concern, the court must "strike a balance between the interests of the public employee in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Olendzki v. Rossi*, No. 12-1340, 2014 WL 4257842 at *3, __ F.3d __, (7th Cir. Aug. 29, 2014) (internal quotations and citations omitted). If the defendant employer can demonstrate that the interest of the public employee in commenting on the matter is outweighed by the interest of the State in promoting effective and efficient public service, the speech is not protected and the employee cannot sustain a First Amendment retaliation claim. See *Gustafson v. Jones*, 290 F.3d 895, 909 (7th Cir. 2002) (citations omitted).

In this case, defendants Grady and Henert have not met their burden. After reviewing the record, the court finds there is insufficient evidence to conclude that the interests of the NIUPD were outweighed by the interest of plaintiff's union-related activity. As such, the court finds plaintiff has established that his union speech is speech protected by the First Amendment and has satisfied the first element required to set forth a *prima facie* claim. Thus, the court turns next

7

to the issue of whether plaintiff can established the second element - that he suffered a constitutional deprivation.

### 2.) *Constitutional Deprivations*

Grady and Henert do not dispute that plaintiff's termination amounts to a constitutional deprivation. *See* [66] at 4. However, they argue that plaintiff's complaints regarding his assignment to SAFE, other tedious job assignments, schedule changes, and denied vacation time do not constitute constitutional deprivations for the purposes of First Amendment retaliation claims.

Regardless of the parties' dispute concerning the alleged deprivations, plaintiff's assignment to SAFE, his assignment to foot patrol, and his alleged reduction in hours occurred in 2008 and 2009. This is outside the statute of limitations for a Section 1983 claim. *See Cunliffe v. Wright*, No. 12-CV-06334, 2014 WL 2808969 at *5 (N.D. Ill. June 20, 2014); *see also Cunningham v. Village of Mount Prospect*, No. 02-C-4196, 2002 WL 31628208 at *8 (N.D. Ill. Nov. 19, 2002) (noting that Section 1983 claims are subject to a two year statute of limitations). The court has already determined that these are discrete acts which plaintiff can use as background evidence, but are not actionable under a continuous, ongoing injury theory for his First Amendment retaliation claim. *See* [31] at 2.

That said, the court is mindful of this Circuit's liberal interpretation of what an actionable constitutional deprivation can be for First Amendment retaliation claims under Section 1983. *See Mosely v. Board of Educ. of City of Chicago*, 434 F.3d 527, 534 (7th Cir. 2006) (holding that an adverse action for a First Amendment retaliation claim can be "any deprivation under color of law that is likely to deter the exercise of free speech . . . [and that] it "need not be great in order to be actionable.") (citations omitted). Because of this, the court rejects defendants' contentions regarding plaintiff's alleged constitutional deprivations aside from his termination and concludes plaintiff's actionable constitutional deprivations are his 2010 termination, his Spring 2010 assignment to Book Buyback duty, his May 2010 schedule change, his denied vacation day, and the May 2010 investigation of his meltdown.

### 3.) *Causation*

Next, Grady and Henert argue that plaintiff cannot satisfy the third element required to set forth a *prima facie* case for First Amendment retaliation. That is, defendants contend plaintiff has failed to establish that any of his alleged constitutional deprivations were motivated by his union speech.

To survive summary judgment, plaintiff must establish that his union speech was "at least a motivating factor" or a "sufficient condition" of defendants' decision to terminate him or change his schedule or deny him vacation time or assign him to Book Buyback duty. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012) (citing *Greene v. Doruff*, 660 F.3d 975, 979-80

8

(7th Cir. 2011)). To make such a showing, plaintiff may present either direct or circumstantial evidence. *Id.* "Direct evidence is evidence which, if believed by the trier of fact, will prove that the particular fact in question without reliance upon inference or presumption. *Id.* (quoting *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005); *Eiland v. Trinity Hosp.*, 150 F.3d 747, 751 (7th Cir. 1998)). On the other hand, circumstantial evidence is evidence that requires a trier of fact to infer that retaliation occurred. *Id.* (citation omitted). "Regardless of which type of evidence is offered to demonstrate the requisite casual connection in a retaliation claim, a plaintiff must show that the protected activity and the adverse action are not wholly unrelated." *Id.* at 966 (internal quotation marks and citations omitted).

Here, plaintiff relies solely on circumstantial evidence. He contends that the timing of the various retaliatory employment actions in addition to Grady's statement about the union's unfair practice charge being equivalent to a nuclear war are sufficient to demonstrate that his union speech was a motivating factor behind the adverse employment actions he suffered. After reviewing the record, the court disagrees.

While it is undisputed that Grady stated that an unfair labor charge was equivalent to a nuclear war, this comment was made in 2008. Plaintiff was terminated in 2010. His schedule change, denied vacation, and the investigation of his outburst at work all occurred in May 2010. As such, the court finds the temporal proximity of plaintiff's speech and his alleged deprivations too attenuated to find the speech was a motivating factor behind any adverse employment action. *Cf. Spiegal v. Hull*, 371 F.3d 928, 943 (7th Cir. 2004) (determining that four days between the plaintiff's speech and her constitutional deprivation was sufficient); *and Anderson v. Iacullo*, 963 F. Supp. 2d. 818, 840 (N.D. Ill. 2013) (finding that a two-year gap was too long to support an inference of causality); *Benuzzi v. Bd. of Educ.*, 647 F.3d 652, 666 (7th Cir. 2011) (two-month time frame too long to support an inference of a causal connection).

Furthermore, the Seventh Circuit has held that "temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the later." *Coleman v. Donahoe*, 667 F.3d 835, 860-61 (7th Cir. 2012) (citations omitted). "[I]f the best a plaintiff can do is allege that he engaged in protected activity, and then, years later, the employer took an adverse action against him, the claim may not be permitted to proceed." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828-29 (7th Cir. 2014); *see also Carmody v. Board of Trustees of Univ. Of Illinois*, 747 F.3d 470, 480 (7th Cir. 2014) (unexplained three-year gap between employee's report against another employee and his termination made retaliation claim implausible).

Here, plaintiff points only to the temporal proximity between his speech and his adverse employment actions and Grady's comments expressing dissatisfaction with an unfair labor practice charge. This is insufficient to establish causation. The actionable adverse actions occurred in Spring of 2010 and the speech occurred in 2008 and 2009. This is too long to establish a genuine issue of material fact exists with respect to causation.

9

As such, the court finds plaintiff has failed to establish the final element required to set forth a First Amendment retaliation claim under Section 1983. As a result, defendants are entitled to summary judgment on count one.

*4.) Pretext*

It is worth noting that even if plaintiff had established a *prima facie* case, defendants would still be entitled to summary judgment. Under the burden-shifting method, a plaintiff must demonstrate a *prima facie* case and then the burden shifts to the defendant to provide a non-discriminatory reason for the adverse action. *See Thayer*, 705 F.3d at 251-52. If the defendant meets this burden, the plaintiff must offer evidence to establish that the defendant's proferred reasons are a mere pretext for discrimination or retaliation. *Id.* at 252.

"Pretext is more than a mistake on the part of the employer; it is a phoney excuse." *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). A plaintiff can establish pretext by demonstrating that "(1) the employer's reason had no basis in fact; (2) the explanation was not the real reason for its action; or (3) [] the reason stated was insufficient to warrant the adverse job action.*" McArdle v. Peoria School Dist. No. 150*, 833 F. Supp. 2d 1020, 1029 (C.D. Ill. 2011) (citing *Atanus v. Perry*, 520 F.3d 662, 674 (7th Cir. 2008)). When determining whether pretext has been established, the court does not act as a super-personnel department, or attempt to conclude whether the employer's decision was the correct business decision. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006).

The record before this court is clear. It is undisputed that plaintiff had a self-described meltdown on May 27, 2010 where he threatened to shoot members of the NIUPD while he was armed. [61] ¶¶ 40-41. Plaintiff does not dispute that his employment discharge papers cite this as the reason for his termination. *Id.* ¶ 69. Moreover, plaintiff does not dispute that he was evaluated by a psychologist after the incident and the psychologist reported that future meltdowns were a "distinct likelihood." *Id.* ¶¶ 61-62.

In light of these undisputed facts, the court does not find plaintiff has established that the reason for his termination had no real basis in fact or was somehow a phoney excuse for his termination. There is no evidence in the record to suggest that plaintiff's termination was the result of his speech related to the union. Thus, plaintiff has failed to establish that defendants terminated plaintiff's employment for retaliatory reasons.

With respect to plaintiff's other alleged deprivations, it is undisputed that members of the NIUPD generally are not permitted to take vacation during the NIUPD's annual training which typically occurs at the end of the Spring Semester. Plaintiff agrees that in 2010 this occurred in the first week of June (when he sought to take a vacation day). [61] ¶ 37. Thus, to the extent plaintiff claims that his denied vacation day was because Grady and Henert were retaliating against him for his union speech, there is simply no evidence to support such a conclusion.

Instead, defendants have produced sufficient evidence to support the conclusion that he was denied vacation because of the annual training.

The same is true with respect to the 2010 investigation which plaintiff attempts to assert was conducted because of his union speech. Again, plaintiff has admitted that he had an outburst where he threatened members of the NIUPD and does not dispute that he left his department issued gun in his locker because he was "unfocused." [61] ¶ 46. The fact that defendants sought to investigate the matter to determine whether a subsequent episode would occur is more than reasonable and plaintiff has failed to provide any evidence which shows a genuine issue of material fact exists with respect to the investigation being conducted as a form of retaliation.

Thus, plaintiff has failed to demonstrate any genuine issues of material fact regarding the fact that any of defendants' reasons for the alleged constitutional deprivations was a mere pretext for retaliation. Accordingly, Grady and Henert are entitled to summary judgment with respect to count one.[1]

**B. Count Two: Conspiracy under 42 U.S.C. § 1983**

Count two of plaintiff's complaint purports to assert a conspiracy claim pursuant to Section 1983. Grady and Henert argue summary judgment is appropriate with respect to count two because plaintiff's retaliation claim fails and conspiracy is not an independent basis of Section 1983 liability. They also argue the conspiracy claim is barred by the doctrine of intra-governmental immunity. *See* [55] at 13-15. Plaintiff has indicated that he does not take issue with the court dismissing this claim, "provided . . . [that his] Section 1983 claim remains." [59] at 20. However, he does not provide any argument as to why this claim should survive if his Section 1983 claim were dismissed.

It is well established that "conspiracy is not an independent basis of liability in § 1983 actions." *Boothe v. Sherman*, No. 13-C-7228,, 2014 WL 4362842 at *5, –F. Supp. 2d–, (N.D. Ill. Sept. 3, 2014) (citing *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008)). "[A]n actual denial of a civil right is necessary before a cause of action [for conspiracy] arises[.]" *Id.* (citing

---

[1]In their motion for summary judgment, Grady and Henert alternatively argue that they court should grant their motion because they are entitled to qualified immunity. *See* [55] at 14. In light of the court's conclusion that plaintiff has failed to set forth a *prima facie* case and has failed to establish pretext, the court declines to examine whether Grady and Henert are entitled to qualified immunity. However, it is worth noting that plaintiff's response to defendants' arguments concerning qualified immunity are cursory at best. He merely states that defendants are not entitled to qualified immunity because "it was clearly established that a police union representative's speech is entitled to First Amendment protection." [59] at 18. He does not offer further support. This would likely be insufficient to satisfy his burden in defeating defendants' claims. *See Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007) (after a defendant raises a qualified immunity defense, the plaintiff has the burden to show that it should not apply). However, the court, in its discretion, declines to make a determination regarding qualified immunity.

11

*Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982)). In other words, defendants cannot be held liable under Section 1983 for conspiring to retaliate against plaintiff in violation of his First Amendment rights unless "they *actually* violated" his First Amendment rights. *Id.* (citing *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 311-13 (7th Cir. 2010) (emphasis in original)). The court has determined that plaintiff has failed to establish that his First Amendment rights were violated under Section 1983. As such, he cannot establish that defendants Grady and Henert conspired to violate these rights and retaliate against him. *See Hegwood v. City of Berwyn*, No. 09-C-7344, 2011 WL 3882558 at *6 (N.D. Ill. Sept. 2, 2011) (stating that a conspiracy claim under Section 1983 require a plaintiff to establish that the defendants made an agreement to deprive him of his constitutional rights and must also establish "an actual deprivation of his rights arising from overt acts in furtherance of the agreement.") (citations omitted). Thus, Grady and Henert are entitled to summary judgment on count two.[2]

For the reasons stated above, defendants Chief Donald Grady and Lieutenant Todd Henert's motion for summary judgment [54] is granted. The case is closed.

Date: 9/23/2014                              ENTER:

_____
United States District Court Judge

Electronic Notices. (LC)

---

[2] Defendants argue summary judgment is appropriate on count two because of the doctrine of intra-governmental immunity. Because the court concludes that plaintiff cannot establish a prima facie conspiracy claim, the court declines to comment on whether the doctrine of intra-governmental immunity applies here.

12